JOHN M. NASH, Respondent, v. DOWLING & CAVANAUGH, Appellants.

Kansas City Court of Appeals, March 3, 1902.

1. **Master and Servant:** DEFECTIVE APPLIANCE: PROMISE TO REPAIR: ACTION. An employee using a defective appliance after the master has promised to repair may recover for an injury caused thereby.

2. ————: ASSUMPTION OF RISK: ENHANCING DANGER: ACTION. The servant assumes the risk of every danger belonging to the work itself, but if the master's negligence aggravates such danger and the servant is injured thereby, he may recover.

3. ————: CONTRIBUTORY NEGLIGENCE: DEFECTIVE APPLIANCE: PRUDENT USE: JURY QUESTION. Though a servant continue to use defective appliances, yet if the defect is not so glaring as to prevent a prudent person from continuing to use the appliances when it is reasonable to suppose they can be used safely by

the exercise of care, the master is liable for injury arising therefrom; and the servant's knowledge of the defect does not necessarily imply negligence in using. But such question is for the jury.

4. ———: DEFECTIVE APPLIANCE: CONTRIBUTORY NEGLIGENCE: EVIDENCE REVIEWED. The evidence is reviewed and found sufficient to send to the jury the question whether the loss of an eye by a laborer in a rock quarry was caused by the master's negligence in failing to furnish suitable handles for the sledgehammer used by a fellow-servant or whether plaintiff was guilty of contributory negligence in continuing in the service.

5. ———: NEGLIGENCE: EVIDENCE: OPINION. The admission in evidence of the opinion of the plaintiff as to the condition of the handle in the sledgehammer rendering its use dangerous, is error since it invades the province of the jury.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

Plaintiff was employed by defendants in their rock quarry. He began work two or three weeks prior to August 11, 1898. On the day that he began work, he noticed that the handles of the mauls were splintered and defective, one of them being split some eight or ten inches from the eye of the sledge towards the end of the handle. He called the attention of the foreman to their condition. The foreman said that he had ordered new handles and they had not come yet. A few days before the accident, he again called the foreman's attention to the matter, notifying the foreman that the sledge was liable to hurt some one. The foreman said that he didn't understand why the new sledges or handles hadn't come, that he had repeatedly asked for them. Just a few days before plaintiff received his injury, Cavanaugh, one of the defendants, in the presence of plaintiff, promised to send new sledges "right away." The plaintiff continued to work, using the splintered handles with

care, in reliance on the promises of defendants' foreman and of one of the defendants to furnish him safe and suitable appliances. On August 11, plaintiff and one Kerens were set to work "sledging," or breaking up rock. They were obliged to work in a cramped and crowded place. Kerens had one of the mauls with a splintered handle. Before beginning the work of pounding or breaking up the rock, which had a layer of shaly soapstone on top of it, a place ten or twelve inches square was cleaned off, so that in striking the rock they could hit the solid rock, and not the shaly soapstone portion, because if this was hit directly there was danger from flying spalls or splinters which would be struck out from the shaly surface. The method of doing the work was for the men to alternate their blows. Plaintiff stood below the rock and Kerens above, occupying the only possible positions they could at the time. After a few blows had been struck on the rock where it was cleaned off, Kerens, according to plaintiff's testimony, drew back his maul to strike, caught his fingers in the splinters, let the maul come down with a foul or unsteady blow, hitting the shale and soapstone instead of the place which had been cleaned off, and causing thereby a shower of spalls and splinters, one of which struck plaintiff in the eye, totally ruining the sight thereof.

The plaintiff did not deny that he knew the defective condition of the handle of the maul which Kerens was using, and knew the dangers to be apprehended therefrom, but he grounded his action and counted in his petition on the promise of defendants to furnish new and safe handles, and that they had failed to fulfill this promise.

*Harkless, O'Grady & Crysler* for appellants.

(1) A mere complaint by the servant that a tool or appliance is defective does not justify the servant in continuing in the master's employ, unless there is some promise to repair

Nash v. Dowling & Cavanaugh.

or remedy, the defect.    Wood's Master and Servant (1 Ed.), sec. 379; Railroad v. Watson, 114 Ind. 20; Railroad v. Drew, 59 Texas 10.    (2)    Even though there be a promise by the master to repair or remedy the defect in appliances used by the servant, the latter can not avoid the consequence of continuing to use it knowing the defect and the danger, unless he does so relying upon and induced by the promise.    And there is not a particle of testimony to this effect.    Railroad v. Watson, 114 Ind. 20.    (3)    Before plaintiff can recover for an injury he must show that the injury is the result of the defect complained of.    Hudson v. Railroad, 101 Mo. 34.    (4)    If the evidence shows that the injury resulted or may have reasonably resulted from either of two causes, for one of which defendants may be liable and for the other of which they would not be liable, there can be no recovery.    Hogan v. Railroad, 150 Mo. 55; Peavey v. Railroad, 29 Kan. 180 and 181; Cook v. Railroad, 98 Wis. 624 (67 Am. St. Rep. 830).    (5)    The danger from using the sledge was only a danger to the party using it in getting his hand run into the splinters; and that such in turn might have caused the user to strike a glancing blow and throw a spall into the eye of another servant not using it, was beyond the range of reasonable expectation or natural consequence.    The doctrine of reasonable care in furnishing appliances to the servant only applies so far as to take care to guard against reasonable probable results.    Breen v. St. Louis, 50 Mo. App. 212-216; Hudson v. Railroad, 101 Mo. 34.    (6) The court erred in permitting witnesses to give their opinions that the sledge was dangerous to use and was unsafe to use. This usurped the province of the jury.    Koons v. Railroad, 65 Mo. 592; Muff v. Railroad, 22 Mo. App. 584; King v. Railroad, 98 Mo. 240; Gutridge v. Railroad, 94 Mo. 468; Brown v. Railroad, 89 Mo. 152; Eubanks v. City, 88 Mo. 655; Langston v. Railroad, 147 Mo. 457.

*Lathrop, Morrow, Fox & Moore* and *Cyrus Crane* for respondent.

(1) Plaintiff was working in reliance on defendants' promise to furnish new and safe handles, thus taking the case out of the rule precluding recovery where there is knowledge of the defect and danger. Conróy v. Iron Works, 62 Mo. 35; Keegan v. Kavanaugh, 62 Mo. 230; Flynn v. Railroad, 78 Mo. 195; Stephens v. Railroad, 96 Mo. 207; Holloran v. Iron & Foundry Co., 133 Mo. 470. (2) The evidence also shows that the result was one that might be expected from a defect of the kind complained of, so that it was properly left to the jury to say whether or not the defective condition of the handle was the cause of the injury. Settle v. Railroad, 127 Mo. 336; Blanton v. Dold, 109 Mo. 64; O'Mellia v. Railroad, 115 Mo. 205; Browning v. Railroad, 124 Mo. 55; Duerst v. Stamping Co., 63 S. W. 827. (3) The court did not err in admitting the testimony complained of by defendants. Hartman v. Muehlebach, 64 Mo. App. 565; Goins v. Railroad, 47 Mo. App. 173; Cooke v. Railroad, 57 Mo. App. 471; Boettger v. Iron Works, 124 Mo. 87; Johnson v. Railroad, 96 Mo. 340; Czezewzka v. Railroad, 121 Mo. 201; Benjamin v. Railroad, 133 Mo. 274; Goss v. Railroad, 50 Mo. App. 614, 623. (4) At the close of all the evidence, the only question left in dispute was, did the splintered handle cause the injury? This was submitted to the jury, under proper instructions given at the instance of both plaintiff and defendants. Plaintiff's case was so clear and undisputed, aside from this one issue, as to permit the court to say that the verdict is clearly for the right party, and will not be disturbed. Fields v. Railroad, 80 Mo. App. 603; Loeffler v. Packet Co., 7 Mo. App. 185; Kelley v. Clancy, 15 Mo. App. 519; Baustian v. Young, 152 Mo. 317; Earney v. Woodmen, 79 Mo. App. 385; Kuhn v. Ins. Co., 71 Mo. App. 305.

BROADDUS, J.—The plaintiff's suit is against the defendants as partners, to recover damages for personal injuries received, resulting in the loss of one of his eyes. The injury was caused from spalls of rock flying from under the stroke of a sledgehammer wielded by a fellow-workman while working in the rock quarry of the appellant. There was a verdict and judgment for plaintiff for $4,000, from which defendants appealed to the Supreme Court. Before the case was heard by that court, the jurisdiction of this court was increased by constitutional amendment which gave us jurisdiction of the amount in controversy, hence the case has been transferred to this court.

The defendants contend that the plaintiff was not entitled to recover on the evidence for various reasons. First, as it was shown that the plaintiff was aware of the defective condition of the sledge handles, his continued use of them after such knowledge was an assumption by him of the risk incident thereto, without a promise upon the part of the defendants that the defect would be remedied, of which there was no proof. We believe this to be a misconception of the testimony on that point. The plaintiff testified that a few days before the accident, when the defendant Cavanaugh was at the quarry where the work was conducted, the foreman in charge called out "and asked him what was the reason he didn't bring the sledges" (alluding to sledges with handles that were not defective) and in response Cavanaugh said: "I will bring them right away." He had previously called the foreman's attention to the defects in the handles in question, who assured him that he had ordered them and did not know why they had not been furnished. It does not appear that any promise in direct words was made to the plaintiff to remedy the defect, but that was not necessary, if it sufficiently appears that the foreman and Cavanaugh in substance did convey the idea that other handles for the sledges would be furnished, and plaintiff, relying on

Vol 93, app—11.

what they said, continued his service. See Conroy v. Vulcan Iron Works, 62 Mo. 35. In Holloran v. Iron Foundry Co., 133 Mo. 470, it is announced as a well-established rule in this State, "that notwithstanding the defect or risk [referring to appliances and the character of the employment] is brought to the knowledge of the employee, yet if he reports it to his employer and the master promises to repair the defect or re-move the danger, the servant can recover for an injury caused thereby," etc.

And, second, it is contended as a general proposition that the plaintiff was not entitled to recover for the reason that the injury was the result of the danger attending the work, the risk of which, plaintiff, by his employment, assumed; and it is a general rule that, "if the workman is employed in a dangerous job, or to work in a service of peril, and if the danger belongs to the work itself, or the service in which he is engaged, he will be held to all the risks which belong to either." Fugler v. Bothe, 117 Mo. 475; Conroy v. Vulcan Iron Works, supra; Hester v. Jacob Dold Packing Co., not yet reported. But while this is true, it is also established as a general rule in this State, that notwithstanding the servant assumes the risk incident to his employment, yet if the master relaxes his vigi-lance to use reasonable care and caution to protect the servant while engaged in his work, and by reason thereof the servant is injured, the master is liable. The reason for the rule is that the servant is not injured by the danger ordinarily inci-dent to the employment, but by reason of the enhanced or ag-gravated danger brought about by the negligence of the master. Bradley v. Railroad, 138 Mo. 293. In this case, notwith-standing the plaintiff, by reason of his employment, assumed the risk incident from flying spalls thrown out while the rocks were being struck by the sledges, yet if the danger from such flying spalls was aggravated by reason of the negligence of the defendants in failing to furnish to their laborers reasonably safe sledges for use, and the plaintiff was injured as a con-

sequence, his injury was not the result of danger incident to his employment, but was the result of defendants' negligence.

And there is another rule of law applicable to the facts of this case, also well established in this State, viz.: That it is the duty of the master to exercise ordinary care and caution in furnishing his servant with reasonably safe instruments with which to do his work, and notwithstanding the servant knows that the instruments he is using are defective, yet if such defect is not so glaring as to prevent a prudent person from continuing to use them, when it is reasonable to suppose that they can be safely used by the exercise of care and caution, the master is not excused from liability thereby.   Stoddard v. Railroad, 65 Mo. 514; Devlin v. Railroad, 87 Mo. 545; Hamilton v. Mining Co., 108 Mo. 364.   "And negligence on the part of the servant does not necessarily arise from a knowledge of the defects of the appliances he may be using, but it is a question of fact to be determined from such knowledge and other circumstances in evidence."      Hester v. Jacob Dold Packing Co., supra; Huhn v. Railroad, 92 Mo. 440; Devlin v. Railroad, supra; Thorpe v. Railroad, 89 Mo. 650; Dale v. Railroad, 63 Mo. 455; Soeder v. Railroad, 100 Mo. 673.   It follows, therefore, that defendants' demurrer to plaintiff's case was properly refused by the court, as it was a question for the jury to say whether the defects in the sledge handles, of which plaintiff had knowledge, were of such a character as would deter a person of ordinary prudence from using them because it would not be safe to do so, with the exercise of reasonable care.

But it is claimed that the defects in the handles of the sledges were not shown to have caused plaintiff's injury.   The purport of plaintiff's testimony was that while his co-laborer Kerens was in the act of striking the blow which is alleged to have caused the accident, his hand came in contact with the splintered part of the handle which had the effect of causing him to make an unsteady or glancing stroke which threw out a great many spalls, one of which struck plaintiff in the eye,

and that a square blow does not throw out sufficient spalls to be dangerous. It was generally conceded by the witnesses on both sides that an uneven or glancing blow upon a stone with one of these sledges would be more likely to send out spalls than an even or square blow. We think upon the whole case there was evidence tending to show that the splintered handles caused plaintiff's injury. An examination of the record will show that there was evidence tending to prove every material allegation of plaintiff's cause of action.

The plaintiff, while testifying, was permitted, over the objection of the defendants, to answer the following question: "Q. Well, did that split condition of the maul render its use in any way dangerous? A. No, sir; it could not be safe, because a man would be liable to catch his hand at any time." The admission of this evidence was a hurtful error, because it was permitting the witness to invade the province of the jury, whose duty it was to determine whether the handle in question was or was not dangerous. Madden v. Railroad, 50 Mo. App. 666; Gutridge v. Railroad, 94 Mo. 468; King v. Railroad, 98 Mo. 235; Koons v. Railroad, 65 Mo. 592. At best the plaintiff's case was not strongly made out, in view of which the objectionable evidence might have had a material influence in gaining the verdict for him.

For this error the cause is reversed and remanded. All concur.