ISAAC STANDLEY, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, November 5, 1906.

1. **EVIDENCE: Opinion of Witnesses: Rule: Exceptions.** The general rule is that non-expert witnesses must state facts and not give opinions but when physical facts cannot be accurately described as they really exist and are such that men of ordinary understanding may comprehend, witnesses who have personal knowledge of the facts may express opinions as for instance, as to the height of a flood on different sides of an embankment and the capacity of a bridge to carry away the flood water.

2. ——: ——: **Flooding Land: Measure of Damages.** It is an error to permit a witness to state what the rental value of land would be without a certain obstruction or how much corn it would produce but for certain floods, since the measure of damages is the rental value of the land as diminished by the obstruction or the flood; but under the pleading in this case the error is held immaterial.

3. **WATER AND WATERCOURSES: Flooding Land: Act of God: Concurring Negligence.** Where negligence concurs with the act of God and but for the negligence the injury would not have occurred, the person guilty of contributory negligence is liable and a railroad company will not be excused from liability for flooding land although the flood was extraordinary, where its negligence contributed to the injury complained of.

4. ——: **Surface Water: Obstruction of Stream: Instructions.** A railroad company is not liable for any damages resulting merely from the overflow of surface water upon an adjoining proprietor's land but if its obstructing the stream caused the overflow and thus converted the water into surface water, it would nevertheless be liable and certain instructions noted in the opinion were properly refused.

5. ——: **Flooding Land: Instructions.** Certain instructions are approved.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Thomas R. Morrow* and *Virgil Conkling* for appellant.

(1) Opinions, conclusions and deductions as to existing conditions, and opinions or predictions as to future happenings are alike incompetent when applied to physical facts which can be described to the jury. Such expressions usurp the province of the jury. Muff v. Railroad, 22 Mo. App. 584; Kendall Co. v. Bain, 46 Mo. App. 581; Madden v. Railroad, 50 Mo. App. 666; Krueger v. Railroad, 84 Mo. App. 358; Kirby v. Railroad, 85 Mo. App. 351; Nash v. Dowling, 93 Mo. App. 156; Schermer v. McMahon, 108 Mo. App. 36; Graney v. Railroad, 157 Mo. 666; Graham v. Railroad (Penn.), 12 L. R. A. 293; Burt v. Wigglesworth, 117 Mass. 302. (2) Plaintiff's instruction numbered 3 was unintelligible, confusing, speculative, not based on evidence, ignored an affirmative defense, and was therefore erroneous. Crole v. Thomas, 17 Mo. 329; Young v. Ridenbaugh, 67 Mo. 574; Brown v. Railroad, 80 Mo. 457; Greer v. Railroad, 80 Mo. 555; George v. Railroad, 40 Mo. App. 433; McCarthy v. Fagin, 42 Mo. App. 619; State v. Allen, 94 Mo. App. 508; Ormsby v. Ins. Co., 98 Mo. App. 371. (3) Plaintiff's instruction numbered 4 erroneously declared defendant liable for the combined effects of negligence and providential acts, and ignored the doctrine of efficient cause. Coleman v. Railroad, 36 Mo. App. 476; James v. Railroad, 69 Mo. App. 431; Kenney v. Railroad, 74 Mo. App. 301; Commission Co. v. Railroad, 113 Mo. App. 544. (4) Plaintiff's instruction numbered 4 is in direct conflict with defendant's instruction numbered 2. The giving of inconsistent and conflicting instructions is reversible error. Otto v. Bent, 48 Mo. 23; Fath v. Railroad, 105 Mo. 537; Redpath v. Lawrence, 42 Mo. App. 101; Frank v. Railroad, 57 Mo. App. 181; Jones v. Railroad, 59 Mo. App. 137; Bank v. Bank, 64 Mo. App. 253; Standard Oil v.

Drug Co., 74 Mo. App. 446; Motch v. Railroad, 82 Mo. App. 50; Haynes v. Casualty Co., 98 Mo. App. 410. (5) Defendant's instruction numbered 9 correctly defined surface water and the liability of defendant on account thereof, and hence was erroneously refused. Shane v. Railroad, 71 Mo. 237; Munkres v. Railroad, 72 Mo. 514; Abbott v. Railroad, 83 Mo. 271; Kenney v. Railroad, 74 Mo. App. 301; Johnson v. Railroad, 111 Mo. App. 378. (6) Instruction numbered 11, requested by defendant, holding the company not liable for the obstruction of surface-waters by the railroad embankment, correctly declared the law of Missouri. The refusal of this instruction was manifest error. M'Cormick v. Railroad, 57 Mo. 433; Hosher v. Railroad, 60 Mo. 329; Benson v. Railroad, 78 Mo. 504; Abbott v. Railroad, 83 Mo. 271; Field v. Railroad, 21 Mo. App. 600; Schnieder v. Railroad, 29 Mo. App. 68; Collier v. Railroad, 48 Mo. App. 398; Johnson v. Railroad, 111 Mo. App. 378.

*Lozier, Morris & Atwood* for respondent.

(1) When the testimony relates to physical facts which cannot be accurately described to the jury as they really exist, and which men of ordinary understanding are capable of comprehending, witnesses who have personal knowledge may express their opinions concerning such things. Walker v. Davis, 83 Mo. App. 374; Madden v. Railroad, 50 Mo. App. 673; Haymaker v. Adams & Son, 61 Mo. App. 585; Eyerman v. Sheehan, 52 Mo. 221; Muff v. Railroad, 22 Mo. App. 584; Taylor v. Jackson, 83 Mo. App. 641; McPherson v. Railroad, 97 Mo. 253; Railroad v. Calkins, 90 Mo. 538; Shattuck v. Railroad, 6 Allen 115; Railroad v. DeLissa, 103 Mo. 130; Railroad v. Donovan, 149 Mo. 93; Sinclair v. Railroad, 70 Mo. App. 596; Salem v. Coffey, 113 Mo. App. 675. (2) The giving of an instruction subjec. to verbal criticism, will not constitute reversible error when, in view of all the other instructions, and the evidence in the

case, it is not likely it misled the jury. Fugate v. Millar, 109 Mo. 281; Barry v. Railroad, 98 Mo. 63; Reilly v. Railroad, 94 Mo. 611; Henry v. Railroad, 113 Mo. 525; Burger v. Burger, 34 Mo. App. 153; Berkson v. Railroad, 144 Mo. 211; Weller v. Railroad, 164 Mo. 180; Parman v. Kansas City, 105 Mo. App. 691; Wheeler v. Bowles, 163 Mo. 398. (3) Where there is negligence concurring with the act of God, and but for such negligence the injury would not have occurred, the person guilty of the negligence is liable. Commission Co. v. Railroad, 113 Mo. App. 544; Davis v. Railroad, 89 Mo. 340; Pruitt v. Railroad, 62 Mo. 540; Coleman v. Railroad, 36 Mo. App. 466; Grier v. Railroad, 108 Mo. App. 565. (4) There is no conflict between plaintiff's instruction numbered 4 and defendant's instruction numbered 2. But even if they were somewhat contradictory, the error, if any, is in said instruction numbered 2 and was self invited on defendant's part, and is not fatal to the merits, and the judgment being manifestly for the right party, it is the duty of this court to affirm it, under R. S. 1899, sec. 865. Farrell v. Ins. Co., 66 Mo. App. 153; Singer v. Dickneite, 51 Mo. App. 245; Miller v. Lange, 84 Mo. App. 219; Melcher v. Derkum, 44 Mo. App. 645; Erickson v. Railroad, 171 Mo. 647; Barry v. Railroad, 98 Mo. 62. (5) Where an overflow is occasioned by the negligent act of a railroad company in obstructing the natural water of a stream, it is liable for the damage caused by such overflow, no matter if the water may be called "surface water" after it is forced out of the bank of the stream onto adjacent land. Edwards v. Railroad, 97 Mo. App. 103; Owen v. Railroad, 109 Mo. App. 608; Brink v. Railroad, 17 Mo. App. 177. (6) Defendant's instruction numbered 11 was properly refused by the court, as it was not within the issues made by the pleadings. But even if it had been proper for the court to have given it, defendant has failed to show by the record that it was prejudiced by its refusal. Haniford v. Kansas City,

103 Mo. 172; Heiman v. Fisher, 11 Mo. App. 275; Brownlee v. Hewitt, 1 Mo. App. 360; Burdict v. Railroad, 123 Mo. 221; Saltmarsh v. Rowe, 10 Mo. 38; Planing Mill Co. v. Spilker, 77 Mo. App. 409; Burns v. Liberty, 131 Mo. 372.

BROADDUS, P. J.—The plaintiff's suit is to recover damages for the loss of his growing crops in the years 1903 and 1904, which he alleges were the result of the negligent construction of defendant's bridge across Little Wakenda creek. He alleges in his petition that at the times mentioned he was the owner of about one hundred and thirteen acres of land, thirty-five of which were bottom land, situated one-third of a mile northeast of said bridge, the defendant's right of way forming its southern boundary. Cottonwood creek and Chapman branch run through and join on plaintiff's land and empty into Little Wakenda creek a short distance north of defendant's said bridge. The bridge was constructed in 1895, the abutments consisting of rock and cement and built on the inside of the banks of the stream. Prior to the construction of the bridge in question there was a bridge built on piles at said point one hundred and eighty feet long, which was replaced by the said bridge complained of. When the iron bridge was built the piling of the old bridge was chopped off several feet above the surface of the bed of the stream; and all the trestle except the space between the abutments of the new bridge was replaced by an earth embankment. In constructing the abutments for the bridge in controversy, the dirt excavated for that purpose was thrown into the creek, a part of which lodged on the bank and part falling into the stream under the bridge. Several carloads of rock were put into the stream by defendant for the purpose of protecting the foundations of the abutments.

There was evidence that the dirt and rock mentioned raised the bed of the stream four or five feet and that

at the time of the overflows the bed of the stream under the bridge was two or three feet higher than it was immediately north of the bridge and that the piling remaining in the stream was almost covered with dirt and rock. And there was evidence that the iron bridge as constructed with its abutments, dirt and rock, and the drift accumulating in consequence of such construction tended to diminish the natural capacity of the stream to carry off water during extraordinary floods of high water: or, as otherwise expressed, created to some extent what might be called a damming of the water.

It was claimed, and there was evidence to that effect, that as a result of such obstruction plaintiff's bottom land in May, 1903, and June, 1904, was covered by water several feet deep which in each instance remained on the said land from ten to twelve hours. It was also shown that prior to the erection of the new bridge only a few acres of said land overflowed and the water remained only four or five hours, and that there had been many rains when as much water fell, before the later bridge was erected, as fell in 1903 and 1904. And it was shown that in June, 1904, the water on the north side of defendant's track was nearly three feet higher than it was on the lower side of the bridge. The plaintiff lost by reason of said overflow a part of his crops and his land was placed in bad condition by reason of the fact that the flood left thereon mud, logs and other debris. The testimony was to the effect that plaintiff's damages ranged from $150 to $300. The jury returned a verdict in his favor for $175. The defendant appealed.

Defendant raises questions as to the competency of testimony introduced on the trial and assigns as error the giving, and the refusal by the court to give, certain instructions to the jury; and further contends that upon the whole case the court committed error in not directing the jury to return a verdict for the defendant as requested.

The defendant has designated only the following part of said testimony to which it has directed its argument. The plaintiff elicited the following testimony from a farmer living in the vicinity of his land: "Q. State if the channel of Little Wakenda creek, after this dirt and rock had been dumped into it, was still wide enough to furnish a discharge for that creek in ordinary high water. A. I think not. Q. In the flood of June, 1904, state if the water on the north side of the railroad was higher than on the south side. A. Yes, it was about two feet and eight inches higher. Q. Why was this? A. The reason was that the water didn't have room enough to go through the opening and so it accumulated above the bridge." The witness Smith was asked: "State if that obstruction had not been in Wakenda creek, making the land subject to overflow, if it did have that effect, whether the rental value of that fifteen acres of pasture would have been more than $1.50 per acre. A. Yes, sir. It would have been worth $3.50 or $4. Q. State, if the overflow had not occurred in 1904, on the eleven acres of corn land, what the reasonable yield would have been. A. I would have got six or seven or eight barrels of corn to the acre."

The position of defendant is that: "Opinions, conclusions and deductions as to existing conditions, and opinions or predictions as to future happenings, are alike incompetent when applied to physical facts which can be described to the jury. Such expressions usurp the province of the jury." In support of this proposition, defendant cites many decisions, among which are the following: Madden v. Railway, 50 Mo. App. 666; Graney v. Railway, 157 Mo. 666; Nash v. Dowling, 93 Mo. App. 156; Schermer v. McMahon, 108 Mo. App. 36. While the plaintiff accepts this proposition as true as a general rule, he claims that exceptions are made in certain cases of which this is one. It is said: "The general rule is that non-expert witnesses must state

the facts and not give their opinions. There are exceptions to the rule. When the testimony relates to physical facts, which cannot be accurately described to the jury as they really exist, and which men of ordinary understanding are capable of comprehending, witnesses who have personal knowledge may express their opinions." [Walker v. Davis, 83 Mo. App. 374; Madden v. Railway, 50 Mo. App. 666.] In Commonwealth v. Sturtivant, 117 Mass. 122, the court said: "The competency of this evidence rests upon two necessary conditions — First, that the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and, second, that the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding." On the trial of a case a witness, a farmer and non-expert, who had lived all his life in the locality was asked if the dimensions of a certain culvert were large enough to permit the carrying away of any ordinary waters that accumulated there as the result of a freshet, and that the drift, leaves and logs of any ordinary flood were likely to choke up and dam the waters. The court held: "The enquiry does not involve any unmixed question of science and skill, but was one on which the judgments of ordinary persons having sufficient opportunity for personal observation, and giving in their testimony the facts of their observation, might be properly received, for such comparison and weight as the jury might see fit to give them." [McPherson v. Railway, 97 Mo. 253.] The evidence objected to seems to come within the exception to the general rule as stated, under the law as interpretated by the courts of this State. [Haymaker v. Adams & Sons, 61 Mo. App. 585; Byerman v. Sheehan, 52 Mo. 223.]

The question put to witness Smith, that if there had been no obstruction of the creek by defendant whether

the rental value of fifteen acres of the land would have been more than $1.50 per acre, was certainly incompetent as well as the answer to it. And the further question to said witness, that, "If the overflow had occurred in 1904, on this eleven acres of corn land, what the reasonable yield would have been," was also incompetent. The objection to both questions is that it is an attempt to show what might have happened. The proper way to have proven plaintiff's damages to the fifteen acres of pasture land would have been to show its usual rental value for similar years. And we do not think it was competent to show what would have been the probable yield of the corn land for the year 1904, as its reasonable rental value was the measure of plaintiff's damage. It seems to us that in allowing the witness to testify as to how much corn the ground would have yielded had it not been for the flood, was permitting him to invade the field of speculation as to what might have been brought forth. As to what the yield would have been depended upon many contingencies apparent to all men. But, as the plaintiff struck from his petition all his allegations as to the productiveness and rental value of his land, the error in the admission of said objectional evidence worked no injury to the defendant. The court by instruction limited plaintiff's right to recover damages to the actual value of the growing crops that were destroyed by the flood.

The evidence was to the effect that the floods in question were of an extraordinary character. It is contended by appellant as a general proposition, and so conceded by respondent, that the defendant was not liable for the destruction of crops as the result of such flood, it being what lawyers call the act of God. But the plaintiff invokes another rule, viz.: Where there is negligence concurring with the act of God, and but for such negligence the injury would not have occurred, the

121 App—35

person guilty of such contributory negligence is liable. Such seems to be the settled law in this State. In Pruitt v. Railroad, 62 Mo. 527, the rule was recognized and so far as we are informed there has been no departure therefrom. The latest decision of this court on the question was in Commission Co. v. Railroad, 113 Mo. App. 544. The St. Louis Court of Appeals holds to the same effect, Grier v. Railroad, 108 Mo. App. 565. And such is the holding in Davis v. Railroad, 89 Mo. 340. The evidence tended to show that the natural capacity of the stream had been diminished by reason of the construction of the bridge, and that the overflow over and upon plaintiff's land was greater and more harmful than it would have been but for such obstruction. The plaintiff by instructions was limited in his right to recover only for such damages as were occasioned by the act of defendant and not for those caused by the act of God, or the extraordinary flood. In other words, the jury were required to say how much greater the overflow and consequent damages were than they would have been had not the natural capacity of the stream been diminished by the bridge as constructed.

The defendant complains of the action of the court in refusing to instruct the jury as follows: "The jury are instructed that defendant under the law was not required to make provisions for surface water, either by culverts, trestles, or in any other manner, and if the jury believe from the evidence that plaintiff's injuries, if any, were caused by surface water, then the jury will find for defendant.

"Surface waters are such as are not flowing or contained in a regular stream or watercourse. Whenever waters escape from a watercourse and are flowing over fields or lands where they are not accustomed to flow, the said waters become surface waters and a railroad company is not under obligations to provide for the escape thereof."

The law undoubtedly is, that the defendant was not liable for any damages resulting merely from overflow of surface water onto plaintiff's land. Yet if the defendant by obstructing the flow of water in the channel of the stream caused it to overflow, and it thus became surface water, it would be liable for all damages occasioned thereby. Otherwise, there could have been no liability for such obstruction, for, as soon as the water left the banks of the stream, according to the instruction asked, it became surface-water. The instruction should have been so modified as to have made it apply to surface water not caused by the act of defendant. It was misleading under the issues and evidence. [Brink v. Railroad, 17 Mo. App. 177; Munkres v. Railway, 72 Mo. 514.] But the question is too one-sided to require the necessity for decisions of courts and citations from law writers to elucidate it.

It is contended that instruction numbered four of plaintiff is contradictory of that of defendant numbered two. We have come to the conclusion that when carefully compared and analyzed they are not in conflict, and that each asserts a proper declaration of law as applicable to the case. Instruction numbered eleven was properly overruled, as there was no claim for damages caused by the erection of defendant's roadbed and embankments. Instruction numbered three given for plaintiff we do not think is faulty, but on the contrary clearly states the law of the case.

Affirmed. All concur.