JAMES W. BOGGS v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, Appellant.—80 S. W. (2d) 141.

Division Two, March 5, 1935.

*Pendleton & Martin* and *Carl S. Hoffman* for appellant.

*Rubey M. Hulen* and *Edwin C. Orr* for respondent.

530

COOLEY, C.—This case, which comes to the writer on reassignment, was certified to this court by the Kansas City Court of Appeals in like manner and for the same reason as the case of Pearson Elevator Company v. Missouri-Kansas-Texas Railroad, 336 Mo. 583, 80 S. W. (2d) 137, decided herewith and we take jurisdiction for the reason therein stated. This case, like the Pearson Elevator Company case, is an action for damages resulting from the defendant's

failure to cause to be constructed and maintained ditches along its railroad as required by Section 9953, Revised Statutes 1919, now Section 4765, Revised Statutes 1929 (3 Mo. Stat. Ann., p. 2158). Plaintiff obtained judgment for $700 from which defendant appealed, the appeal being granted to the Kansas City Court of Appeals, where by a divided court the judgment was affirmed and the cause was by that court certified here as in the Pearson Elevator Company case. This case is similar in certain essential respects to the Pearson Elevator Company case and has been treated here by the parties as substantially a companion case, in so far as similar points are presented.

Plaintiff sues for loss of the rental value in 1929 of a tract of ninety-eight acres of land owned by him and described in his petition. It is situated in the Missouri River bottom east of New Franklin. Defendant's railroad runs in a general east and west direction north of plaintiff's land, which is close though not quite adjacent to defendant's right-of-way, there being a strip of land three or four hundred feet wide between plaintiff's land and the railroad. A small stream called Salt Creek comes out of the hills north of the railroad and some distance west of plaintiff's land, flows eastward on the north side of the railroad to a point some two miles east of plaintiff's land, where it turns and passes through a bridge or "double culvert," in the railroad to the south side thereof and thence continues to the Missouri River. The railroad through that part of the river bottom is built on an embankment four or five feet high. Plaintiff's evidence tends to show that the natural slope and drainage of his land is toward the northeast and that prior to the construction of the railroad his land drained in that direction into Salt Creek and that when overflow water from Salt Creek came upon it such water would drain off in a short time without causing damage to crops or preventing cultivation of the land; that the railroad was constructed about 1892 and that thereafter surface water from rainfall or from overflow from Salt Creek which frequently came over the railroad or through certain openings in the embankment farther west and got upon his land could not drain off promptly as theretofore, being held by the railroad embankment until it evaporated or sank into the soil; that in 1929 this situation was such that his land in question could not be cultivated and he lost the use of it; that defendant did not construct and maintain a ditch or ditches along its railroad as required by the statute; that such a ditch on the south side of the railroad connecting with Salt Creek could have been constructed practicably and at reasonable cost and would have drained plaintiff's said land and prevented the injury complained of. Such further reference to the facts as may be necessary will be made in the course of this opinion.

The sufficiency of plaintiff's petition is not challenged. By its answer defendant admitted its incorporation, that it was engaged in operating the railroad and denied generally the other allegations of the petition. It then alleged:

"Further answering, the defendant states that the Pearson Drainage District was incorporated by decree of the Circuit Court of Howard County, Missouri, on June 1, 1928, under and pursuant to the provisions of Chapter 28 of Article 1 of the Revised Statutes of 1919 of the State of Missouri, for the purpose of draining the lands of plaintiff and others; that the land described in plaintiff's petition and all of defendant's right-of-way, adjacent to and both east and west of plaintiff's land is included in the said district; that on the 9th day of January, 1929, the plan of drainage of said district was filed in the said Circuit Court of Howard County, Missouri, and by said court approved; that said plan of drainage called for the construction of a ditch down defendant's right-of-way on the south side to connect with Salt Creek on the east; that said plan included numerous other ditches, drains and levees to be erected and built on defendant's right-of-way; that said plan of drainage as adopted and approved called for the condemnation, for the use of said drainage district, of all of defendant's right-of-way except that part actually occupied by its track and roadbed; said land being more particularly described as follows: (Here follows description.)

"Defendant further states that on January 14th, 1929, commissioners were appointed by said court to assess benefits and damages as provided by statute; that on February 20th, 1929, the commissioners filed their report with said court; that said commissioners' report assessed the benefits against this defendant at $24,386.53; that on September 9th, 1929, the said court approved said commissioners' report and that said benefits as approved by said court had been amended as to this defendant and the amount so approved was $25,051.43, and fee simple title to all of defendant's right-of-way as hereinabove described was vested in said Pearson Drainage District.

"Defendant further states that the benefits assessed to the defendant, as hereinbefore set out, are a binding and legal obligation owing by this defendant and a lien against its property; that the plan of drainage adopted by said drainage district provides for a ditch down its right-of-way on the south to connect with Salt Creek, and levees on the north side of said right-of-way; that under Section 4425 of the Revised Statutes of 1919 of the State of Missouri, the defendant was prohibited by law from constructing any ditch down its right-of-way which would connect with any ditch provided for in said plan of drainage of the Pearson Drainage District, or interfere with said plan of drainage, and the defendant further states that any ditch down its right-of-way to connect with Salt Creek

would connect with ditches of said drainage plan and would interfere with said plan of drainage. Defendant further states that there was no place on the right-of-way for the construction of a ditch to connect with Salt Creek for the reason that all defendant's right-of-way except that part actually occupied by the tracks and roadbed of said railroad, had been condemned by Pearson Drainage District for its use in connection with the drainage of said district as hereinbefore set out, and that fee simple title to all said part of said right-of-way so condemned was vested in said drainage district and under its complete control and that this defendant had no right to use said land for any purpose.

"Further answering, defendant says that to hold it liable for a failure to construct a ditch down its right-of-way to connect with with Salt Creek for the purpose of draining plaintiff's land after the incorporation of said Pearson Drainage District; and after the adoption of said plan of drainage, the assessment of $25,051.43 benefits against this defendant and the condemnation of all that part of its right-of-way for the use of said district as hereinabove set out, and in view of the said Section 4425 of the Statutes, would be depriving the defendant of its rights and would constitute the taking of defendant's property without due process of law in violation of Section 30 of Article 2 of the Constitution of the State of Missouri and of Section 1 of Article 14 of the Amendments of the Constitution of the United States of America."

Upon plaintiff's motion the court struck out the above-quoted portion of the answer on the ground that it constituted no defense to plaintiff's cause of action. That ruling presents the first question for consideration. It is essentially the same question presented and decided in the Pearson Elevator Company case, and for the reasons there stated this point is ruled against appellant here. In the instant case the allegations of the portion of the answer stricken out relative to the time of organization of the drainage district, the adoption of its plan for reclamation, etc., and the description of the ditch which it is claimed should have been constructed, with its relation to the proposed drainage system of the district, are more specific than in the Pearson Elevator Company case. It further appears in this case, however, that the report of the drainage district commissioners assessing benefits and damages was not approved by the circuit court till after the damage sued for had been done. But without discussing these differences we think our holding on this point in the Pearson Elevator Company case applies here.

Appellant contends that the principal instruction, No. 1, given for plaintiff submitted an erroneous measure of damages. It directed the jury, in event of a finding for plaintiff, to assess his damages at the reasonable rental value, for the year 1929, of the land,

if any, which plaintiff was precluded from cultivating by reason of water remaining thereon in consequence of defendant's failure to construct and maintain ditches. Defendant asserts that the proper measure of damages was the value of the growing crop destroyed.

Plaintiff sued for loss of the use of his land for the year 1929. He alleged that as a consequence of defendant's failure to construct and maintain ditches as required by the statute his land was over-flowed and that the water was retained thereon for a long space of time so that he was unable to cultivate the land that season, alleging its rental value as $20 per acre for the ninety-eight acres, which would amount to $1960, the sum for which he asked judgment. There was no suggestion in the petition, nor for that matter is defendant's answer, that there was a crop growing on the land. It developed in plaintiff's evidence, however, that the land in question had been seeded to wheat in the fall of 1928 and when the water began flooding the land, which according to plaintiff's evidence was "early in the spring" of 1929, the wheat was growing. Its then stage of growth is not shown but it must have been small. The evidence tended to show that the lands were flooded during at least the months of April, May and June. The wheat was all killed except five to eight acres on ground somewhat higher than the remainder. On that part the wheat matured. Plaintiff's evidence was that he was unable to cultivate the remainder of the ninety-eight acres during the crop season of 1929 because of water remaining on it and that he lost the use of it for that season.

In support of its contention that the value of the wheat crop at the time of its destruction is the correct measure of damages appellant cites the following cases from this jurisdiction: Pace v. St. L. Southwestern Ry. Co., 174 Mo. App. 227, 156 S. W. 746; Hunt v. St. L. I. M. & S. Railroad, 126 Mo. App. 261, 103 S. W. 133; Carter v. Wabash Ry. Co., 128 Mo. App. 57, 106 S. W. 611; Anderson v. St. L. I. M. & S. Ry. Co., 129 Mo. App. 384, 108 S. W. 605; Deal v. St. L. I. M. & S. Ry. Co., 144 Mo. App. 684, 129 S. W. 50.

The Carter case was a suit for damages for destruction of a meadow by fire. The court held that in such case, where the meadow was killed, the damage was to the realty and the measure of damages was the difference in value of the premises before and after the fire. That rule was disapproved by this court in Couch v. K. C. S. Ry. Co., 252 Mo. 34, 158 S. W. 347, wherein it was held that where a meadow is destroyed by fire so that it becomes necessary to reseed it the proper measure of damages is the cost of reseeding the meadow and the rental value of the land for such time as the owner is deprived of crops of hay therefrom, by reason of the fire. The latter case does not discuss the measure of damages for destruction of annual crops such as wheat and corn that have to be planted each

season. The other cases cited by appellant involve such crops. But they were actions in which the damages sued for were for injury to or destruction of the crops. Even in such cases the decisions are not harmonious. For example, in Standley v. A. T. & S. F. Ry. Co., 121 Mo. App. 537, 545, 97 S. W. 244, it is stated, without citation of authorities, that the measure of damages for loss of a growing crop was the reasonable rental value of the land. And in Adam v. C. B. & Q. Ry. Co., 139 Mo. App. 204, 208, 122 S. W. 1136, it is said: ''The value of an annual crop such as corn, wheat, or oats destroyed before maturity is measured by the cost of reseeding and the rental value of the land. [Standley v. Railway, 121 Mo. App. 537; Jones v. Cooley Lake Club, 122 Mo. App. 113.]'' [See, also, Knight Bros. v. C. R. I. & P. Railroad Co., 122 Mo. App. 38; Woolston v. Blythe (Mo. App.), 251 S. W. 145, 150.] The weight of authority however, seems to be that where the action is to recover for loss of a growing annual crop, such as wheat, corn, etc., at least if it had reached a stage of growth such that there was reasonable certainty that it would have matured, the measure of damages is its value at the time of its destruction. [See Hunt v. Railroad, 126 Mo. App. 1. c. 264, and other cases cited by appellant, above mentioned; United Verde Copper Co. v. Ralston (C. C. A.), 46 Fed. (2d) 1; 17 C. J. 887, sec. 190; note to Teller v. Bay & River Dredging Co., 12 L. R. A. (N. S.) 267; Mo. Pac. Ry. Co. v. Sayers (Kan.), 27 L. R. A. (N. S.) 168, and note.]

If a landowner is prevented from planting and growing a crop at all and is deprived of the use of his land throughout the season a different rule for measuring his loss must be applied. To hold that in such case he may recover the value of a crop which he might have planted and raised, less cost of production, etc., would be going too far into the realm of speculation and uncertainty.

In Jones & Jones v. Cooley Lake Club, 122 Mo. App. 113, 116, it is well said: ''In considering damage to a growing crop and damages resulting from being prevented from growing a crop at all, different considerations enter into a measurement of the damages. If one is prevented from using the land, the damage is its rental value.'' We think there can be no doubt that such is the correct rule for measuring the damage for deprivation of the use of the land and that it is in effect recognized and applied in Couch v. K. C. S. Ry. Co., supra. [See, also, Waters v. Brown, 44 Mo. 302.]

In the instant case plaintiff pleaded and his evidence tended to prove that he was unable to cultivate his land and was deprived of the use thereof during the crop season of 1929. It was fertile land and adapted to the growing of corn and probably other crops as well as wheat. There was evidence from which the jury could have found that the wheat on all but the five to eight acres was killed as early

as April. Had not plaintiff been prevented thereafter from cultivating the land he might yet have planted and raised a corn crop or some other crop thereon. In these circumstances, conceding that plaintiff might have maintained an action for destruction of the wheat crop, was he limited to such action and recovery or might he, as he did, forego the loss of time, labor and money spent in putting in the wheat and sue for loss of the use of his land for the season of 1929? This question we do not find decided in any case called to our attention or that our own research has discovered.

If plaintiff had not sown wheat in the fall of 1928, or had sown it and it had failed to germinate, or if in the early spring of 1929 while there was yet time to plant and grow another crop he had concluded that the outlook for a wheat crop was not sufficiently promising to justify devoting the land in 1929 to growing and maturing it and had elected to plow it up and use the land for growing some other crop he would have had the right to do so. And if in such circumstances he had been deprived of the use of the land for growing such other crops by reason of water standing thereon due to defendant's fault it seems clear that his right to recover for loss of the use of his land in 1929 would be the same as though he had not sown wheat thereon in the fall of 1928. We can perceive no good reason why, under the facts and circumstances shown in this case, plaintiff should not be held entitled to recover the rental value of the land. In our opinion the court did not err in submitting the case on that theory.

Even if the measure of damages submitted was technically erroneous such error, if any, could not have prejudiced the defendant in this case and would not therefore be ground for reversal. The evidence shows that not over eight acres of the wheat matured. The estimates of witnesses ranged from five to eight acres. Take the highest estimate, eight acres. That acreage produced two hundred bushels of wheat in 1929. The remainder of the ninety-eight acre tract was land of the same general character, equally fertile. The wheat raised on the eight acres was somewhat damaged by water—was about grade four wheat—but plaintiff received $200—$1 a bushel for it. That would amount to $25 per acre for the eight acres. Undamaged wheat that graded higher brought better prices. Plaintiff's evidence tended to show that the price of wheat in that vicinity that season ranged from $1 to $1.35 a bushel. For the rental value of the ninety acres or so, on which the crop had been destroyed and which the jury, under the instruction given, found that plaintiff had been precluded from cultivating, the jury allowed plaintiff $700—less than $8 per acre. The witnesses who testified as to rental value all placed the rental value of the land in question at sums ranging from $15 to $25 per acre. Most of them said $15 to $20.

They said the customary rental given for farm land such as that in question in the locality was one-half of the grain produced and they arrived at the cash rental value by taking into consideration the probable yield and the then prevailing price of grain. The cost of harvesting and threshing wheat that season in that locality is not shown, but we are satisfied that it could not have amounted to enough to reduce plaintiff's income from the eight acres on which the crop matured to a sum as low as the jury awarded for rental value of the remainder of the tract. The evidence would justify a finding that but for the water complained of the land on which no crop was produced would have yielded as well as that on which the wheat crop matured. Under the evidence we cannot see how defendant could have been prejudiced by the direction given in the instruction as to measure of damages, even if erroneous.

■ Appellant complains of the court's refusal to permit it to amend its answer at the close of plaintiff's evidence by adding a paragraph alleging that plaintiff's son, R. H. Boggs, was a necessary party plaintiff. On cross-examination of plaintiff defendant elicited the following:

"Q. Who put the wheat out for you, Mr. Boggs? A. I had it done.

"Q. How did you have it put out? A. I had it put out like you put out wheat any time.

"Q. Well, I mean, was it on a part crop—shares? A. No, no; me and my son put it in.

"Q. Your son put it in with you? A. Yes, sir.

"Q. He has an interest in the crop? A. Yes.

"Q. What interest does he have—half? A. Third."

R. H. Boggs testified on direct examination that he helped his father put in the wheat in the fall of 1928. On cross-examination he testified: "Q. Now, Mr. Boggs, as I understand it, you put in this wheat crop for your father? A. Yes, I put it in for him.

"Q. And you have a third interest in it? A. He gave me a third when we got anything."

The foregoing was all the evidence on the subject. At the close of plaintiff's case defendant asked leave, which the court refused, to amend its answer by adding the following paragraph: "Further answering, defendant states that the land described in plaintiff's petition was rented to R. H. Boggs on shares and that the said R. H. Boggs had an undivided one-third interest in said crops and use of said lands for the year 1929 and that said R. H. Boggs is a necessary party to this action."

The evidence does not show that R. H. Boggs had rented the land, as defendant wished to allege. Unless the arrangement described meant that he was simply to receive one-third of the wheat raised,

if any, as pay for his services in helping put in the crop it at most made him a cropper. He was not a tenant, was not in possession nor entitled to possession. [See Morrill v. Alexander (Mo. App.), 215 S. W. 764, and cases cited; B. & O. S. W. Ry. Co. v. Stewart, 128 Ill. App. 270.] He owned no interest in the land. If we are right in holding that plaintiff can maintain this action for the rental value of the land, R. H. Boggs is not a necessary party to such action. In any event we think the judgment should not be reversed because of the court's refusal to permit the amendment. Absent a timely raising of the question that R. H. Boggs should have joined in the suit, plaintiff could recover alone for his damage. [Van Hoozier v. H. & St. J. Ry. Co., 70 Mo. 145; Wilkerson v. St. L. S. W. Ry. Co. (Mo. App.), 224 S. W. 72.] Such defect of parties plaintiff, if any, is waived if not objected to by demurrer if it appears on the face of the petition or by answer if it does not so appear. [Secs. 770, 774, R. S. 1929, 2 Mo. Stat. Ann., pp. 1000, 1010; Wilkerson v. Ry. Co., 224 S. W. l. c. 74, and cases cited.] When defendant asked leave to amend its answer after the trial had progressed to the close of plaintiff's case it made no claim or intimation, so far as the record shows, that it did not know the facts which it had developed on cross-examination of plaintiff and his son and which it then asked leave to plead in time to have so pleaded before the trial began. No reason was shown for not having raised that point before the trial. Under the circumstances we think the trial court should not be charged with error in refusing the leave to amend at that stage of the case, even if the amendment would otherwise have been proper.

Appellant offers some other criticisms of plaintiff's Instruction No. 1, which we have examined and find to be without substantial merit. We deem it unnecessary to discuss them. In our opinion the instructions as a whole sufficiently submitted the issues to be determined by the jury.

■ Error is charged in that the court, over defendant's objection, permitted plaintiff to read his petition to the jury at the opening of the trial. Appellant in its brief concedes that it suffered no harm thereby. The point therefore need not be considered.

■ It is asserted that "there is nothing in the evidence to show what land was flooded," and that for such reason, among others, defendant's demurrer to the evidence should have been sustained. The ninety-eight acre tract was accurately described in the petition and all the evidence referred to that ninety-eight acre tract. The evidence sufficiently identified the land referred to by the witnesses as that described in the petition and showed that it was all flooded except the five to eight acres above mentioned on which the wheat matured. Said land on which the crop matured was not described

by metes and bounds or otherwise than as a part of the ninety-eight acres on a "kind of ridge," but even so the evidence sufficiently showed what land was flooded and that it was land described in the petition. Other grounds of the demurrer are disposed of by what we have said above.

We have carefully considered the contentions made by appellant and are of the opinion that there is no prejudicial error shown in the record. The judgment of the circuit court is affirmed. *Westhues, C.,* not sitting; *Fitzsimmons, C.,* concurs.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.