---o---

ROSALINE REID, Respondent, *vs.* PIEDMONT & ARLINGTON LIFE INSURANCE Co., Appellant.

1. *"Family physician"—Phrase defined, not technical.*—The phrase, "family physician," is one that is in common or ordinary use, and has no particular, definite or technical signification. It signifies one who usually attends and is consulted by the members of a family in the capacity of a physician; it means one who is accustomed to attend, and not one who has occasionally attended.

2. *Evidence—Questions as to freedom from symptoms of disease.*—The question asked of a witness, whether a person was "in good health and free from symptoms of disease," is improper as involving a mere conclusion. The facts should be stated so that it could be seen on what the opinion was predicated.

3. *Insurance, life—Declarations of insured after issue of policy.*—Declarations of the insured as to his health, made after the issuing to him of a policy of life insurance, are not competent evidence.

4. *Insurance, life—Instructions—Evidence.*—An application for life insurance which was made a part of the policy, contained the following question: "Name and residence of your own or family physician, or of the medical attendant who last rendered you professional services?" This was answered, "Have none." An instruction was offered on the trial in a suit on this policy

58 421
33a 372
58 421
36a 330
58 421
59a 340
60a 508
58 421
130 172
58 421
139 560
58 421
73a 16
58 421
147 574
148 78
58 421
152 266
58 421
163 191
58 421
102a 696
58 421
98a 526

declaring that " the plaintiff cannot recover, for the reason that deceased received medical attendance from a physician named, prior to the date of the application." *Held*, that the instruction was properly refused, because it undertook to tell the jury that they must find in a particular way, without regard to any testimony in the case but that of witnesses who supported the defendant's side.

5. *Practice, civil—Trials—Instructions, abstract, improper.*—Instructions which do not respect the specific facts bearing on the particular case, are improper even though they correctly state abstract propositions of law.

### ON MOTION FOR RE-HEARING.

6. *Practice, civil—Appeals—Supreme Court will not weigh evidence.*—The Supreme Court, in law cases, will not weigh the evidence, and will not interfere with a verdict if there is any evidence to support it.

7. *Practice, civil—New trials—Evidence, weight of—Duty of trial court.*—It is the duty of the trial court, in passing upon motions for new trials, to weigh the evidence; it has opportunities to see the witnesses; to form opinions as to their veracity; to observe whether they are biased or prejudiced; and can also determine whether any improper influences operated on the jury in producing their verdict: and where the trial court is of the opinion that the verdict is not supported by the evidence, or is against the weight of evidence, should never hesitate to grant a new trial.

*Appeal from ·St. Louis Circuit Court.*

John Wickham with Crews and Laurie, for Appellant.

I. The application for insurance forms part of the contract, and the statements contained in it are warranties. (Daniels vs. Hudson R. Fire Ins. Co., 12 Cush., 416 ; Loehner vs. Home Mut. Ins. Co., 17 Mo., 255 ; Miller vs. Mut. Ben. Ins. Co., 31 Iowa, 231 ; Bliss Life Ins., pp. 53, 54, 55 ; May on Ins., 582.)

II. Affirmative warranties are conditions precedent, their truth must be pleaded by the assured, and the burden of proof rests on the plaintiff to show that they have been strictly complied with. (Wilson vs. Hampden Ins. Co., 4 R. I., 159 ; Miller vs. Mut. Ben. Life Ins. Co., 31 Iowa, 231 ; Craig vs. U. S. Ins. Co., 1 Pet. R., 416 ; Campbell vs. New England L. Ins. Co., 98 Mass., 402 ; McLean vs. Connecticut M. Ins. Co., 100 Mass., 474.)

When there is any concealment or false statement of facts existing at the commencement of the risk, the policy never

takes effect, the risk is never assumed. (Obermeyer vs. Globe M. Ins. Co., 43 Mo., 579.)

III. It is immaterial whether the statements made in the application in this case be held to be warranties or representations, and even though the court, following the tendency of the recent decisions, should hold them to be representations, still the result would be the same; for the same line of decisions uniformly hold, that when an unlawful answer is made to a question which is, beyond doubt, material to the risk, policies obtained by such deceit are null and void. (May Ins., p. 582–590; France vs. Ætna Life Ins. Co., 2 Ins. L. Jour. 657; Kelsey vs. Universal Life Ins. Co., 35 Conn. 238; Miles vs. Conn. Ins. Co., 3 Gray, 580; Vose vs. Eagle Life & Sr. Ins. Co., 6 Cush., 42; Barrett vs. Saratoga C. Ins. Co., 5 Hill, 188; Anderson vs. Fitzgerald, 4 House of Lords, 484; Babbitt vs. Liverpool & London Ins. Co., Ins. Law Jour., April, 1872.)

*A. J. P. Garesche,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff, as widow of Thomas J. Reid, brought this action on a policy of life insurance for $3,000 issued by the defendant.

The answer denied that the plaintiff or her husband complied with the conditions of the policy, and set up that the policy was obtained by fraud and misrepresentation in the application upon which it was founded, and which formed a part thereof; that the misrepresentations consisted of false statements and concealments by Thomas J. Reid, the party insured, in his application, in regard to the condition of his health at that time and prior thereto, and as to whether or not he had a family physician or medical attendant.

The replication denied all these averments made in the answer.

By the pleading it stands admitted that the application for insurance was made, by express agreement, a part of the contract, and the statements, therefore, became warranties, and

hence, the question to be determined upon the trial was, whether they were true or false. The issue was one of fact, and if no error was committed in giving or refusing instructions, or in passing upon the admissibility of testimony, the verdict is conclusive. Among other inquiries in the application is the following: "Name and residence of your own or family physician, or of the medical attendant, who last rendered you professional service?" To this, the assured answered that he had none.

Upon the examination of Dr. Roberts, who was a witness, the defendants propounded the interrogatory: "What is the meaning of the phrase 'family physician?'" The question was objected to, and the objection sustained. The question was addressed to the witness, as an expert, upon the theory that the expression had a technical signification. But this theory is not maintainable. The phrase "family physician" is one that is in common or ordinary use, and has no particular, definite or technical signification.

In May on Insurance, (§ 304,) the authorities are collected, and it is announced as the settled law, that a family physician is the physician who usually attends and is consulted by the members of a family, in the capacity of physician. And where the usual medical attendant is inquired for, the one who has been accustomed to attend and not the one who has occasionally attended, should be mentioned.

This question was much discussed in a recent case in Minnesota, where the majority of the court held, that the phrase "family physician," in common use, was not a technical phrase, and that in their opinion, it might be sufficiently defined as signifying the physician who usually attended and was consulted by the members of the family in the capacity of a physician; that a person who usually attended and was consulted by the wife and children of the assured as a physician, would be his family physician although he did not usually attend on, and was not usually consulted as a physician by the assured, himself. Where there is no doubt about the fact of the physician's employment, or that he usually attended the family,

the rule above laid down may be quite sufficient; but when it is uncertain whether there was any physician or not, then it becomes a question of fact, and should be submitted to the jury for their finding. (Gibson vs. Am. Mut. L. Ins. Co., 37 N. Y., 580.)

The question put to the witness was improper, and was rightly excluded. The phrase had no technical meaning, and was not a subject calling for an opinion from an expert.

It is also complained of, that the court ruled out as incompetent, the question to the same witness, as to whether or not the assured was at the time of making the application, in good health and free from any symptoms of disease. This question involved a mere conclusion and was objectionable. The facts should have been asked, in order that it might have been seen on what the inference or opinion was predicated. But, under any circumstances, the defendant was not injured by the ruling of the court. It was permitted to give fully and unrestrictedly all the evidence it had relating to the physical condition, symptoms of disease, and general health of the assured at the time the application was made. The declarations of the insured, as to his health, made subsequent to the issuing of the policy, were rightfully rejected. (Mulliner vs. Guardian Mut. L. Ins. Co., 1 N. Y. Sup. Ct. Rep., 448.)

There are no more questions in reference to evidence, deserving of notice, and it only remains to consider the instructions.

The following instructions asked by the defendant were refused: "The court instructs the jury that the plaintiff cannot recover, for the reason that it appears from the evidence, that Thomas J. Reid received medical attention from Dr. E. K. Roberts, prior to the date of the application for insurance. The court declares the law to be, that warranties must be exactly and literally true, and when the answers of the party insured, in an application for life insurance, are warranties and form a part of the contract of insurance, any mis-statement or concealment whatever, in regard to the matters and

things therein inquired of, will render the policy null and void, even though such mis-statement or concealment, may be innocently or ignorantly made."

The subjoined instructions, all asked by the defendant, were given: "If the jury believe, from the evidence, that Thos. J. Reid made the application for insurance admitted in evidence in this case, and that in said application said Reid was asked the following question, to-wit: "Name and residence of your own or family physician, or of the medical attendant, who last rendered you professional services," and that said Reid answered said question as follows, to-wit: "Have none;" and if the jury further believe, from the evidence, that such answer was in any respect, untrue, then the jury are instructed that plaintiff cannot recover. If the jury believe, from the evidence, that Thos. J. Reid made the application for insurance admitted in evidence in this case, and that the following question was asked said Reid, in said application, to-wit: "Have you had, since childhood, fistula or consumption, if so, which and how recently?" and that said Reid answered said question as follows, to-wit: "No;" and if the jury further believe, from the evidence, that said answer was in any respect untrue, then the jury are instructed that they must find for the defendant. If the jury believe, from the evidence, that Thomas J. Reid made the application for insurance admitted in evidence in this case, and that in said application, said Reid was asked the following question, to-wit: "Have you had an habitual cough, or any disease, or is any suspected?" And that said Reid answered said question, to-wit: "No;" and if the jury believe from the evidence, that said answer was in any respect untrue, then the jury are instructed that they must find for the defendant.

If the jury believe from the evidence, that Thos. J. Reid made the application for insurance admitted in evidence in this cause, and that said application contained the following question, to-wit: "Have you ever had any serious illness, local disease, affection, or personal injury, if so, of what na-

ture, and when was it?" And that said Reid answered said question as follows, to-wit: "No;" and if the jury further believe from the evidence, that said answer was in any respect untrue, then the jury are instructed that they must find for the defendant.

If the jury believe, from the evidence, that Thomas J. Reid made the application for insurance admitted in evidence in this cause, and that said application contained the following question, to-wit: "Are you now in good health, and free from any symptoms of disease?" And that said Reid answered as follows, to-wit: "I am;" and if the jury further believe, from the evidence, that said answer was in any respect untrue, then the jury are instructed that they must find for the defendant.

If the jury believe from the evidence, that Thos. J. Reid made the application for insurance admitted in evidence in this case, and that said application contained the questions and answers made thereto by the said Reid mentioned in defendant's instructions numbered one, two, three, four and five, then the jury are instructed that the matters and things so inquired about are material, and the question of their materiality is not to be considered by the jury. Nor is it necessary that defendant should show that the death of Thos. J. Reid was occasioned by any of the diseases therein mentioned.

The burden of proof is on the plaintiff, and to entitle her to recover a judgment against the defendant, she must show by a preponderance of testimony, that each and every one of said answers are true in every respect. If the jury believe from the evidence, that Thos. J. Reid made the application for insurance admitted in evidence in this case, and that said application contained the questions and answers thereto, and by the said Reid, mentioned in defendant's instructions numbered one, two, three, four and five, then the jury are instructed that said answers are warranties and formed a part of the contract of insurance between the said Reid and defendant; and if the jury believe from the evidence, that any of said answers are untrue in any

respect, whatever, whether by ignorance, mistake or otherwise, they must find for defendant."

These instructions are so full and complete, and cover every point of law raised in the case in a manner so favorable to the defendant, that it is difficult to perceive any substantial ground, whatever, upon which a reasonable objection can be based. The action of the court in refusing the first instruction was correct. It undertook to tell the jury that they must find in a certain way, without regard to any testimony in the case, but that of those witnesses who supported the defendant's side. It was wholly wrong; it invaded the province of the jury and took the whole case out of their hands. It should have been drawn in different terms and submitted the question, whether or not the jury believed from the evidence that Reid had received the medical attention prior to the date of the application.

The second instruction refused was a mere abstraction, and more in the nature of a treatise on law than a declaration respecting the specific or particular facts bearing on the case. But the instructions given, presented the case so strongly and in such a favorable attitude for the defendant, that there was nothing left to be done, and no further ground of complaint was furnished. They singled out and enumerated every inquiry and answer contained in the application, relating to the matter in contention, and told the jury that if anything contained in any answer was untrue in any respect, it avoided the policy and that the verdict must therefore be for the defendant. To give particular emphasis to this view of the law, the jury were directly instructed that the answers constituted warranties, and that if any of the answers were untrue in any matter whatever, without regard as to how the untruth originated, whether by ignorance or mistake, or from any other cause, then the plaintiff could not recover.

The case was strongly contested, there was much evidence given on both sides, and it is evident from the verdict, that the jury must have believed that the answers of the assured in the application were entirely true in every respect. This

being the case, we will in nowise interfere, or disturb the finding. The declarations of law could not have been more favorable for the defendant, and the questions of fact were exclusively for the ·jury.

Judgment affirmed; the other judges concur.

On Motion For Re-hearing Wagner, Judge, delivered the opinion of the court.

Defendant has filed its motion for a re-hearing in this case, on the ground that the verdict of the jury was unsupported by the evidence and in direct conflict with it. It is needless to repeat what has been so often said, that this court will not undertake to weigh the evidence. Such a course would be entirely inappropriate in an appellate tribunal. The opportunity for judging of the credibility of witnesses is entirely denied to us. Hence, when there is any evidence to support the verdict we cannot interfere. The evidence may be slight, and it may be contradictory,·but we cannot tell the proper credit that should be attached to it. In this cause there was room for doubt in reference to the points insisted on, and, therefore,we cannot interfere on that ground. In looking into the judgment, the amount seems to be for too much. Plaintiff was only entitled to recover the face of the policy with six per cent., and the verdict seems to be in excess of this amount by $151.00; the jury, undoubtedly, calculated the interest at ten per cent. This they had no right to do. This might have been rectified in the court below, by the plaintiff remitting the excess, but as she did not do so, she will be required to pay the costs of this appeal, and upon her entering a remittitur of the excess of $151, the motion will be overruled.

But in this connection, it is well enough to make another remark. Constant complaints are reaching us that in some of the Circuits the rule adopted here is followed, and that the judges consider themselves bound thereby. But this is founded in an entire misapprehension. The trial courts have opportunities which we have not. In witnessing and presiding over the trial, they are put in possession of facts which

we cannot possibly attain. They see the witnesses; can form an opinion respecting their veracity; can observe whether they are biased or prejudiced; can notice their willingness or unwillingness, and a great many other circumstances which it is impossible to transfer to paper. They can also form a correct conclusion as to whether any improper influences operated on the jury in producing the verdict. All these considerations render it peculiarly proper that the question of granting new trials, on account of the verdict being against the weight of testimony, should be exclusively exercised by the court trying the cause, and where the trial court is of the opinion that the verdict is not supported by the evidence, or is against the weight of evidence, it should never hesitate in exercising the power and giving the aggrieved party a new trial.

The motion is overruled with the modification above stated; the other judges concur.