## MARY D. FULTON, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 6, 1907.

1. **EVIDENCE: Personal Injury: Appearance: Conclusion of Fact: Non-Expert Opinion.** Where the basic facts are of such a nature that they cannot be reproduced to present to the jury the picture impressed on the mind of the witness, then the impression itself becomes an evidential fact and may be given to the jury because of the impossibility of bringing to them all the facts that combine to create it; so, the appearance, pain and activity of one suffering from an alleged injury may be shown to the jury by the opinion of non-experts who were acquainted with the injured party before and after the injury.

2. ———: **Ground for Recollection: Witness's Thoughts.** The practice of admitting statements of no evidential value except to show that the witness had good grounds for his recollection, should be followed with caution and should not obtain at all in instances where the falsity of the statement cannot be detected; and so the reason given by a witness for observing plaintiff's action that he wondered if she was going to get off the car while running is properly refused admission.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*John H. Lucas, Charles A. Loomis* and *Ben F. White* for appellant.

(1) (a) The court erred in the admission of the testimony of Creta M. Fulton, in which the witness compared the ability of plaintiff to "get around" after the injury with the same before the injury. (b) The court erred in the admission of the testimony of Mrs. B. Fitzgerald to the effect that plaintiff "appeared to be suffering." (c) The court erred in the admission of the testimony of Mrs. F. M. Darnall as to the "activity" of plaintiff. Ried v. Insurance Co., 58 Mo. 421; Hurt v. Railroad, 94 Mo. 261; King v. Railroad, 98 Mo. 235. (2) The court erred in the rejection of the testimony of defendant's witness C. G. Baird as to why and how he remembered that plaintiff walked off the car while it was in motion. This was the principal issue in the case, and the portion of the testimony rejected would have had great probative force with the jury in convincing them of the truth of the witness' statement. Wigmore on Evidence, secs. 655, 730; State v. Fox, 25 N. J. L. 602; Angell v. Rosenbury, 12 Mich. 257; Dickson v. Bamberger, 107 Ala. 293; Tomlinson v. Derby, 43 Conn. 562; Kendall's Ex'rs v. Collier, 97 Ky. 446, 30 S. W. 1002; O'Hagan v. Dillon, 76 N. Y. 173.

*Walsh & Morrison,* *Wash Adams* and *Charles B. Adams* for respondent.

(1) (a) The court properly admitted the testimony of the witness Creta M. Fulton, in which she compared plaintiff's ability to "get around" before and after the injury. (b) The court properly permitted the witness Fitzgerald to testify that plaintiff "appeared to be suffering." (c) The court properly admitted the testimony of the witness Darnall as to the "activity of plaintiff." The above testimony consists of statements of fact, derived in each instance from the witness' per-

sonal observation of plaintiff's condition, before and after her injury, and was not in the strict sense of the term opinion evidence. But if classed as opinion evidence, it was clearly within the exceptions to the rule against non-expert opinion evidence and was therefore admissible in evidence. Commonwealth v. Sturtevant, 117 Mass. 122; Heman Con. Co. v. O'Brien, 81 Mo. App. 641; Sampson v. Railroad, 57 Mo. App. 308; 17 Cyc. 34, 87; State v. Harris, 150 Mo. 61; Railroad v. McLendon, 63 Ala. 276; Peterson v. Traction Co., 23 Wash. 615; Railroad v. VanVleck, 143 Ill. 196; Railroad v. Fishman, 169 Ill. 196; Heddles v. Railroad, 77 Wis. 228; Standley v. Railroad, 1 Mo. 203. If error was committed in the admission of such testimony, it was harmless and not reversible error. 71 Cyc. 60; Hoffman v. Railroad, 51 Mo. App. 273. (2) The court properly excluded the testimony of the witness Baird, wherein he stated that he "wondered if she was going to get off when the train was in motion without calling to the conductor to stop." Such secret and uncommunicated thoughts, arising in the mind of a witness, are utterly without probative force and improper to go to the jury for any purpose. State v. Miller, 44 Mo. App. 159; Phares v. Barber, 6 Ill. 271; Dickson v. Bamberger, 107 Ala. 293; Adm. v. Troy, 35 Ala. 184.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Judgment was for plaintiff in the sum of twenty-five hundred dollars and defendant appealed.

In the afternoon of January 11, 1902, plaintiff, accompanied by her daughter, became a passenger on a west-bound cable train operated by defendant on the Twelfth street line of its street railway system in Kan-

sas City. From the evidence of plaintiff, it appears that she and her daughter intended to ride to Washington street and there to transfer to a car on the Summit street line, also operated by defendant, and for that purpose, on paying their fare, obtained transfers from the conductor. When the train reached the usual stopping place at the junction of the two lines, it was stopped for the purpose of discharging and receiving passengers. After it came to a standstill, plaintiff and her daughter arose from their seat in the rear car and proceeded with proper expedition to depart. The daughter went first and succeeded in reaching the street in safety, but plaintiff was not so fortunate. While she was in the act of stepping from the last step of the car to the street, the train was suddenly started, with sufficient force to throw her to the street and she was seriously injured. On the part of defendant, the evidence tends to show that plaintiff waited until after the train had started forward and had attained some speed before she attempted to alight. As this conflict in the evidence was resolved by the jury in favor of plaintiff, we will treat as proved the facts most favorable to the cause of action asserted, and unless we should find that prejudicial error was committed against defendant during the progress of the trial, in some of the respects claimed, the judgment will not be disturbed.

The nature and extent of plaintiff's injuries and the results produced by them were made the subject of a sharp contest. Plaintiff claimed that she sustained severe injuries to her head and spine, that two ribs were broken, and that she suffered from a severe displacement of the uterus, all in consequence of the fall caused by defendant's negligence. Her evidence strongly supported all of these claims, but defendant insists that the learned trial judge erred in permitting witnesses who knew plaintiff intimately, both before and after her injury, to testify concerning changes in her

personal appearance and activity which followed that occurrence. Her daughter testified:

"Q. How did your mother appear after she was thrown from this car as you have described, with reference to getting about; how did she walk? A. She did not get around so well as she had before; she limped on account of her side hurting her. Q. Now, prior to the time your mother was thrown from this car as you have described, how was she as to being an active person and otherwise? A. Why she was very active for a woman of her age. (Plaintiff was fifty-four years of age.) Q. And how did she appear to be with reference to activity after she was thrown from the car as you have described? A. Well, it was hard for her to get around. Q. Now, have you lived with your mother ever since this time? A. Yes, sir. Q. How has she appeared with reference to activity ever since she got out of the house after that three months? A. Well, she does not get around as well as she did before she was hurt. Q. I will get you to state whether or not since that time, after the three months that you say she was confined to her house, she has given forth any expression of pain? A. Yes, sir. Q. Now, at the time when she gave these expressions I will get you to state whether or not she appeared to be suffering? A. Yes, sir."

Another witness testified:

"Q. How did she look; what was her appearance? A. Well, she was in great pain; her head and her side — Q. How did she appear, Mrs. Fitzgerald; did she appear to be suffering or not? A. Yes, sir; she seemed to be suffering awful, the back of her head and her side. Q. How did she get around as compared to how she did before? A. Always kind of holding her side and walking like she was in pain or seemed disabled. Q. Now did she after this time that you saw her in bed, do her own housework as she did before or not? A. No, sir. Q. I will get you to state beween the time

after she got up, whether or not she ever appeared to you to be suffering? A. Well, always."

And a third witness testified:

"Q. The objection is to your comparing it. Please don't compare it. Just tell the jury how she is now every day as to activity without any comparison. A. She is not active at all. She can hardly get off and on the car, hardly go upstairs without holding her side."

Defendant, in its brief, thus states the ground of its objection to this class of evidence: "The action of the trial court in permitting witnesses for the plaintiff to testify as to the 'appearance' of plaintiff, before and after the injury; as to whether she could 'get around as well after as before the injury;' as to whether she suffered physical pain or not, and all such questions, was error. This was a mere conclusion or opinion of the witness and was inadmissible in that form and for that reason. 'If the opinion sought is based on no evidence it should be rejected; and if properly founded on evidence that evidence ought to be laid before the jury, the law presuming that they are equally as capable to draw therefrom the correct inferences.' " Authorities cited in support of this contention are: Reid v. Insurance Co., 58 Mo. 421; Hurt v. Railway, 94 Mo. l. c. 261; King v. Railway, 98 Mo. 235; Best on Evidence (Chamberlane), 497.

It will be observed the witnesses were not asked to state, nor did they state, their conclusions or opinions respecting the cause of the alterations in the physical appearance which they observed in plaintiff after her injury, nor of the pain and suffering they say was apparent, nor of the great impairment to her activity, and the question for our determination is: Are these statements of apparent physical deterioration and impairment given by non-expert witnesses to be regarded as mere expressions of opinion and, therefore, inadmis-

sible as evidence, or should they be denominated state-
ments of fact possessing evidential value?

The general rule applicable to non-expert witnesses
is that they must state facts and not give their opinions,
since the jury, with the facts before them, are as well
able to draw conclusions as are the witnesses themselves,
and it is considered to be inimical to a just and impar-
tial solution of controverted issues to permit such wit-
nesses to give their own coloring to the facts about which
they are called to testify. Declaratory of the rule are
the authorities cited by defendant to which we have
referred, but by no means are they decisive of the ques-
tion under consideration. There are well-recognized ex-
ceptions to this general rule which are born of necessity.
A party litigant would be deprived of a most important
right, and in many instances, would suffer the infliction
of a great injustice should the rules of evidence be so
restrictively applied that he could not bring the real
facts of his case to the triers of fact. To prevent such
injustice, one of the exceptions to the general rule
against non-expert opinion evidence is that where the
conclusion of the witness falls in the class termed "con-
clusions of fact," it no longer is to be treated as a
matter of opinion, but as a fact. One of the rules to be
applied in making the classification is that where the
appearance observed by the witness, about which he
is asked, unquestionably could produce but one impres-
sion on all reasonable minds, the opinion of the wit-
ness may be given as a short hand rendering of the facts,
though the facts constituting the appearance may be
fully and accurately depicted to the jury. In such
cases, as well as in those of another class to which
reference will be made, the safeguard against imposition
is in the right of cross-examination, relative to the facts
on which the opinion is based. [Council v. Railroad,
123 Mo. App. 432, 100 S. W. 57.] Another test by
which the admissibility of non-expert opinion evidence

may be determined is this: If the facts in their entirety on which the witness is asked to state his conclusion may be reproduced on the minds of the jury and the opinion to be drawn from them is a matter about which reasonable minds well might differ, the conclusions of the witness are his opinion only, and are devoid of probative value. But if the basic facts are of such nature that they cannot be reproduced to present to the jury the picture impressed on the mind of the witness, then the impression, itself, becomes an evidential fact and may be given to the jury, because of the impossibility of bringing to them all of the facts that combined to create it. [Standley v. Railway, 121 Mo. App. 537, 97 S. W. 244; McPherson v. Railway, 97 Mo. 253.]

Belonging to the class of non-admissible evidence was the question discussed in the case of King v. Railway, supra. There the witness was asked if a certain railroad crossing was "dangerous for a stranger crossing there." Clearly improper, for whether the danger the witness might have thought existed lay in the fact that there was no filling between the rails, or that the planks contained protruding spikes, or that holes were there, or that there were no approaches, the fact itself on which the conclusion was founded could be accurately depicted to the jury, and the conclusion could be a subject of legitimate difference among reasonable minds. This being true, it was for the jury, uninfluenced by the opinion of the witness, to say whether the particular defect or defects, if existent, constituted a source of danger to a strange traveler.

Illustrative of the rules under which opinions may be given, many examples are to be found in the reported cases. It has been held proper for a witness to state that certain blood stains on a garment indicated the direction from which a murderous blow was struck (Commonwealth v. Sturtivant, 117 Mass. 122); that certain

hairs were human hairs (Commonwealth v. Dorsey, 103 Mass. 412); for the witness to state what he understood by certain expressions, gestures and intonations and to whom they were applied (Leonard v. Allen, 11 Cush. 241); that a horse appeared to be sulky and not frightened at the time of the accident (Whittier v. Franklin, 46 N. H. 23); that a horse's foot appeared to be diseased (Willis v. Quimby, 31 N. H. 485). That a person appeared to be ill or disabled or afflicted with fever or destitute (Parker v. Steamboat Co., 109 Mass. 449; Wilkinson v. Moseley, 30 Ala. 562; Barker v. Coleman, 35 Ala. 221; Autauga County v. Davis, 32 Ala. 703); that a person acted as if she felt very sad (Culver v. Dwight, 6 Gray 444); that from the appearance and conduct of two persons one appeared to be attached to the other (M'Kee v. Nelson, 4 Cowen 355).

Opinions may be given by non-expert witnesses as to state of health, hearing or sight, or the ability of another to use his arms or legs naturally and whether such other is apparently suffering pain or is in possession of his or her mental faculties or is intoxicated, excited, calm, angry or the like. [Railway v. Fishman, 169 Ill. 196; Heman v. O'Brien, 81 Mo. App. 1. c. 641; Sampson v. Railroad, 57 Mo. App. 308; State v. Harris, 150 Mo. 1. c. 61; Railroad v. McLendon, 63 Ala. 266; Peterson v. Seattle, etc., Co., 23 Wash. 615; Railway v. Van Vleck, 143 Ill. 480; Heddles v. Chicago, etc., 77 Wis. 228; Jefferson v. Life Assn., 69 Mo. App. 135.]

In each of these instances it was impossible for the multitudinous details of the appearance in question to be portrayed to the jury by human testimony and because the jury could not have before them the basic facts, the opinion of the witness was received as the best evidence obtainable. The testimony under consideration clearly falls within the latter class. How can a person relate or even be conscious of all of the indicia of pain and suffering in another? Or, how can he de-

pict or hold in mind the numerous. outward manifesta-
tions of ill health? The changed color, the drawn ex-
pression, the dullness of the eye, the subdued demeanor,
the inactivity expressed by every movement and gesture
and the hundred other things, of the presence of many
of which because of their intangibility, the beholder is
not even conscious, but all of which enter into the com-
bination of facts that produce the impression on his
mind, are not susceptible of reproduction in their en-
tirety and for that reason the appearance produced by
their cooperation necessarily must be treated as an evi-
dential fact; and, as we observed before, the safeguard
against being imposed on by this character of evidence
lies in the exercise of the right of cross-examination.
It was proper to admit the evidence.

Further complaint is made of the action of the
trial court in excluding certain statements appearing
in a deposition offered in evidence by defendant. The
witness testified that he was standing on the platform
of the rear car and observed plaintiff during the occur-
rence in question: "Q. Were you looking right at this
lady? A. When she got up we had started and she
got up and *I wondered whether she was going to try
to get off the car without calling to the conductor to
stop.* . . . Q. You did not see whether she had
anything in her hands or not? A. No, I did not, she
had a cloak or shawl on, I don't remember which. Q.
If you had been watching her you could have seen if she
had bundles or packages? A. I did not notice any
bundles or packages of any kind. Q. I say if you had
been watching her you could have seen them? A. I
probably might have seen them. Q. How is it that
you remember the exact time she got out of her seat?
A. Because the car had started and she raised up to
go out after we had started. Q. What called your at-
tention to it? A. She called my attention. *I wondered
whether she was going to try to get out of the car while*

*we were running.*" The statement italicized is that which the court excluded. It is contended by defendant it should have been admitted because it served to show the degree of attentiveness bestowed by the witness on the occurrence, and therefore, added to the credibility of his positive assertion of a fact which, if found to exist, would have disproved the cause of action pleaded. The principle invoked by defendant in aid of its contention is thus expressed in Wigmore on Evidence, sec. 655: "The party offering a witness may desire to make plain the strength of the witness' grounds of knowledge and the reasons for trusting his belief. This is a legitimate purpose. But, in pursuing it, the witness will often naturally state circumstances which may give indirectly some unfavorable impressions against the opposite party — as where the witness is asked 'What made you notice the defendant's features?' and replies, 'Because he was the same man who stole my wagon last year.' Or he may relate other person's utterances which would be inadmissible as hearsay, but for their present utility. Nevertheless, on the principle of multiple admissibility, the general rule is that the witness may on the direct examination state the particular circumstances which legitimately affected his knowledge or recollection, even though the fact would otherwise be inadmissible; the judge's instruction to the jury must be relied upon for preventing their improper use of the fact."

We give sanction to this as a correct exposition of a serviceable principle, but do not believe it should be applied in instances like that under consideration. To permit a witness to support his assertions of fact with the narration of the unuttered thoughts which accompanied his observation of the occurrence in question, certainly would open the door to harmful and unjust consequences. The party against whom the testimony was given would have no means of combating the state-

ment or of showing its falsity (if, in fact, it were untrue), and a mistaken or mendacious witness would be given full rein to impose on the jury the most prejudicial kind of false argumentation against which the injured party would be utterly helpless. The practice of admitting statements of no evidential value, except to show that the witness had good grounds for his recollection, should be followed with caution and should not obtain at all in instances where the falsity of the statement cannot be detected and, therefore, cannot be punished. The evidence was properly excluded.

Finally, it is urged that the instruction on the measure of damages given at the request of plaintiff enlarged the scope of the issues presented by the allegations of the petition. This point we find to be so obviously without merit that its discussion would serve no useful purpose.

The judgment is affirmed. All concur.